UNITED STATES of America,
Plaintiff–Appellee,
Cross–Appellant,

v.

Oanh Vu NGUYEN,
Defendant–Appellant,
Cross–Appellee.

No. 90–2023.

United States Court of Appeals,
Fifth Circuit.

Oct. 30, 1990.

---

Roland E. Dahlin, II, Federal Public Defender, Thomas S. Berg, Asst. Federal Public Defender, Houston, Tex., for defendant-appellant, cross-appellee.

Kathlyn G. Snyder, Paula Offenhauser, Asst. U.S. Attys., Henry K. Oncken, U.S. Atty., Houston, Tex., for plaintiff-appellee, cross-appellant.

Before CLARK, Chief Judge, THORNBERRY, and HIGGINBOTHAM, Circuit Judges.

THORNBERRY, Circuit Judge:

A jury convicted the defendant, Oanh Vu Nguyen, of violating the Endangered Species Act by illegally possessing a threatened species of sea turtle, see 16 U.S.C.A. §§ 1538(a)(1)(G), 1540(b)(1) (West 1985 & Supp.1990); 50 C.F.R. § 227.71(d) (1989), and by illegally importing the turtle, see 16 U.S.C.A. §§ 1538(a)(1)(G), 1540(b)(1); 50 C.F.R. § 227.71(a) (1989). The trial judge instructed the jury that they could convict Nguyen even if he did not know that the turtle was a threatened species or that his conduct was illegal. On appeal, Nguyen contends that the trial judge committed reversible error by failing to impose a *mens rea* requirement, but because the legislative history shows that Congress intended to make violations of this provision of the Endangered Species Act a general intent crime, we AFFIRM his conviction.

Nguyen was convicted of a class B misdemeanor. See 18 U.S.C.A. § 3559(a)(7) (West Supp.1990). Therefore, the district court was required to impose a $10 special assessment for each conviction. See id. § 3013(a)(1)(A)(ii). Because it failed to do so, we MODIFY the judgment to impose the mandatory special assessment.

## FACTS AND PROCEDURAL HISTORY

On May 4, 1989, off the coast of Galveston, Texas, in the Gulf of Mexico, two Coast Guard Officials boarded the fishing vessel *Diana* because its home port was not visible on its stern. The officers asked the three crew members which one of them was the captain. The defendant, Nguyen, allegedly stepped forward. Then one of the officers, Officer Kevin Walker, conducted a safety sweep of the vessel while the other, Officer Jeffery Kelley, remained with the crew.

During the safety inspection, Walker discovered an ice chest, covered with condensation, concealed in the insulating space between the engine room and the ice hold. He brought the chest back onto the deck. Kelley asked Walker what was in the chest, but before Walker could respond, Nguyen came forward and said, "Turtle." The officers opened the cooler and discovered the four flippers, the edible portions, of a sea turtle. The shell, head, and intestines had been discarded. The parties stipulated that the turtle was a Loggerhead sea turtle (*caretta caretta*), a threatened species. See 50 C.F.R. § 227.4(b) (1989).

Nguyen stated that he and his crew had hauled the turtle up in their shrimp net and that it was dead when they brought it on board the vessel. Nguyen advised the crew that it was illegal to keep the turtle, but they persuaded him to let them salvage the edible portions. The only disputed evidence concerned Nguyen's responsibility for the *Diana* and its crew. Nguyen testified that one of the other two men was the captain of the boat but that he came forward to speak with the Coast Guard officers because he was the only one who could speak English.

The Coast Guard escorted the *Diana* and its crew to the Galveston Coast Guard base. Nguyen was charged with two violations of the Endangered Species Act. In count one, he was charged with knowingly possessing a threatened species of sea turtle, see 16 U.S.C.A. §§ 1538(a)(1)(G), 1540(b)(1) (West 1985 & Supp.1990); 50 C.F.R. § 227.71(d) (1989). The judge instructed the jury that Nguyen could be found guilty of that charge if the government proved beyond a reasonable doubt that (1) "the defendant knowingly possessed a sea turtle or its parts"; (2) "the sea turtle was an animal listed as a threat-

ened species of wildlife by the United States"; and (3) "the animal had been taken either upon the high seas or in the territorial sea of the United States." In count two, Nguyen was charged with knowingly importing or attempting to import a sea turtle into the United States. *See* 16 U.S.C.A. §§ 1538(a)(1)(G), 1540(b)(1); 50 C.F.R. § 227.71(a) (1989). In his charge to the jury, the judge stated that Nguyen could be found guilty on this count if the government proved beyond a reasonable doubt that (1) "the defendant did an act"; (2) "the act was a knowing attempt to import something"; (3) "the thing was a threatened species"; and (4) "the attempted importation was into the United States."

In October 1989, the jury found Nguyen guilty on both counts. The court sentenced him to two years probation and, as a special condition of his probation, required him to teach English to five Vietnamese Americans. The court also decided not to impose a special assessment on the convictions.

### DISCUSSION

### I.

The Endangered Species Act is codified in sections 1531 to 1544 of title sixteen. Section nine makes it unlawful for any person to violate regulations promulgated under the Act. *See* 16 U.S.C.A. § 1538(a)(1)(G). The National Marine Fisheries Service, the National Oceanic and Atmospheric Administration, and the Department of Commerce published regulations forbidding the importation and transportation of the Loggerhead sea turtle. *See* 50 C.F.R. §§ 227.4(b), 227.71(a), 227.71(d). Under section eleven, which provides for penalties and enforcement, any person who "knowingly violates" these regulations shall "be fined not more than $25,000 or imprisoned for not more than six months, or both." *See* 16 U.S.C.A. § 1540(b)(1).

Neither the judge's instruction on count one nor the instruction on count two required the jury to find that Nguyen knew the sea turtle was a Loggerhead sea turtle or that he knew the sea turtle was a threatened species. For this reason, Nguyen

claims that we should reverse his conviction. Before discussing the legal merits of Nguyen's claim, we note that his appeal lacks factual support. Nguyen testified at trial that he knew it was illegal to keep the turtle.

[Nguyen]. And I don't know what they do with the turtle, in the morning I wake up and they said they wanted to keep the turtle, the Captain and another crew.

Q. And your frient [sic] wanted to keep the turtle?

[Nguyen]. Right.

Q. Did you want to keep the turtle?

[Nguyen]. No. I tell them it's the law you cannot keep a turtle. If you keep a turtle you get big trouble.

Consequently, Nguyen admitted that he had the requisite state of mind to support his conviction even under his interpretation of section eleven. Nevertheless, section eleven did not require the government to show that Nguyen knew his conduct was illegal.

"The plain intent of Congress in enacting [the Endangered Species Act] was to halt and reverse the trend toward species extinction, whatever the cost. This is reflected not only in the stated policies of the Act, but in literally every section of the statute." *Tennessee Valley Auth. v. Hill*, 437 U.S. 153, 184, 98 S.Ct. 2279, 2297, 57 L.Ed.2d 117 (1978). Section eleven is no different. The legislative history of that section shows that Congress intended to make violations of its provisions a general intent crime. Thus, it is sufficient that Nguyen knew that he was in possession of a turtle. The government was not required to prove that Nguyen knew that this turtle is a threatened species or that it is illegal to transport or import it.

Previously, subsection (b)(1) of section eleven required the government to prove that a defendant had "willfully commit[ted] an act which" violated promulgated regulations. *See* 16 U.S.C.A. § 1540 note (West 1985). But in 1978, Congress amended subsection (b)(1) by substituting "knowingly" for "willfully." The purpose of this amendment was to make "criminal viola-

tions of the act a general rather than a specific intent crime, and subject[ ] importers and exporters of fish and wildlife and plants to strict liability penalties." *See* H.R.Rep. No. 1625, 95th Cong., 2d Sess. 26, *reprinted in* 1978 U.S.Code Cong. & Admin.News 9453, 9476; H.R.Conf.Rep. No. 1804, 95th Cong., 2d Sess. 26, *reprinted in* 1978 U.S.Code Cong. & Admin.News 9484, 9493. The committee explicitly stated that it did "not intend to make knowledge of the law an element of either civil penalty or criminal violations of the Act." *See id.*[1]

Nguyen argues that it is "aberrational in our jurisprudence" to allow him to be convicted without requiring some sort of mental fault on his part. *See United States v. Anderson,* 885 F.2d 1248, 1249 (5th Cir. 1989) (en banc). In *Anderson,* the defendant was convicted of possessing two automatic pistols in violation of the National Firearms Act, 26 U.S.C.A. § 5861 (West 1989). The pistols were legal when purchased but became illegal because of subsequent modifications. The defendant maintained that he thought the pistols were legal and that he did not know of the modifications. The jury instruction permitted the defendant to be convicted if the government proved that he knew the pistols were "firearms" in a general sense; the government was not required to show that the defendant knew that these guns were of the type proscribed by the Act. *See id.* This court held that the trial court erred in allowing the defendant to be convicted of a felony without imposing a *mens rea* requirement. *See id.* at 1255.

■ The holding of *Anderson* cannot be extended to this case. In *Anderson,* the legislative history of the National Firearms Act was *silent* as to the state of mind necessary to support a conviction. *See id.* at 1254 n. 9. In fact, the court noted that

Congress "plainly" did not intend "to subject to ten years' imprisonment one who possesses what appears to be, and what he innocently believes to be, a wholly ordinary and legal pistol merely because it has been, unknown to him, modified to be fully automatic." *See id.* at 1254. In this case, however, the legislature clearly intended to proscribe certain acts regardless of the actor's mental state. When the legislature provides the mental requirement for a statutory crime, we must follow that direction. *See United States v. Balint,* 258 U.S. 250, 253–54, 42 S.Ct. 301, 302–03, 66 L.Ed. 604 (1922); 1 W. LaFave & A. Scott, *Substantive Criminal Law* § 3.8(a), at 342 & n. 9 (1986). *See also Liparota v. United States,* 471 U.S. 419, 424, 105 S.Ct. 2084, 2087, 85 L.Ed.2d 434 (1985) (noting that "[t]he definition of the elements of a criminal offense is entrusted to the legislature," but imposing a *mens rea* requirement on the offense before it because "Congress [had] not explicitly spelled out the mental state required").

A second distinction between this case and *Anderson* is that a violation of the Endangered Species Act is a misdemeanor, while a violation of the National Firearms Act is a felony. "Other things being equal, the greater the possible punishment, the more likely some fault is required; and, conversely, the lighter the possible punishment, the more likely the legislature meant to impose liability without fault." 1 LaFave & Scott § 3.8, at 343. *Anderson* repeatedly justified its imposition of a *mens rea* requirement by referring to the severe penalties authorized by the National Firearms Act. *See* 885 F.2d at 1250, 1253, 1254. Congress' decision to make violations of section 11(b)(1) of the Endangered Species Act punishable by a maximum of six months in prison and a $25,000 fine reinforces our belief that Congress deliber-

---

1. The only two cases that have interpreted section eleven, subsection (b)(1), have also held that the government does not have to prove that the defendant knew the threatened nature of the species. *See United States v. St. Onge,* 676 F.Supp. 1044, 1045 (D.Mont.1988) (holding that the government did not have to prove that the defendant knew he was shooting a grizzly bear

but only needed to prove that the defendant knowingly shot an animal which turned out to be a grizzly bear); *United States v. Billie,* 667 F.Supp. 1485, 1492–93 (S.D.Fla.1987) (holding that the government did not have to prove that the defendant knew that the animal he shot was a Florida panther).

ately dispensed with a *mens rea* requirement for violations of that statute.

## II.

 Nguyen was convicted of two counts, each of which imposed a maximum sentence of six months imprisonment. An offense that is punishable by more than thirty days but less than six months of imprisonment is a "Class B misdemeanor." *See* 18 U.S.C.A. § 3559(a)(7) (West Supp. 1990). Therefore, the district court was required to assess a $10 special assessment for each of the two Class B misdemeanors of which Nguyen was convicted. *See* 18 U.S.C.A. § 3013(a)(1)(A)(ii) (West Supp. 1990). The district judge apparently decided not to impose the assessment because Nguyen was indigent. *See* Transcript of Sentencing at 4–5, Record on Appeal, vol. 4. However noble his intention, the judge did not have this option: the imposition of special assessments under section 3013 is mandatory. *See United States v. Pagan,* 785 F.2d 378, 380 (2d Cir.), *cert. denied,* 479 U.S. 1017, 107 S.Ct. 667, 93 L.Ed.2d 719 (1986). *Cf. United States v. Munoz–Flores,* —— U.S. ——, 110 S.Ct. 1964, 1967, 109 L.Ed.2d 384 (1990) (noting that section 3013 "requires courts to impose a monetary 'special assessment' "). Therefore, we modify the judgment and impose a $10 special assessment on each of Nguyen's two convictions.

## III.

As a consequence of Congress' clear intention to impose guilt under the Endangered Species Act even if the defendant did not know the protected nature of the species, we hold that the district court's instruction was correct, and we AFFIRM Nguyen's convictions as MODIFIED to impose a $10 special assessment on each.