**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ian Martin LYNCH, Defendant–
Appellant.**

No. 99–30325.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 14, 2000

Filed Dec. 7, 2000

Mary C. Geddes, Assistant Federal Defender, Anchorage, Alaska, for the defendant-appellant.

Steven E. Skrocki, Kevin Feldis, Assistant U.S. Attorneys, Anchorage, Alaska, for the plaintiff-appellee.

Before: GOODWIN, SCHROEDER and HAWKINS, Circuit Judges.

GOODWIN, Circuit Judge:

Ian Martin Lynch appeals his conviction under 16 U.S.C. § 470ee(a) of the Archeological Resources Protection Act ("ARPA"). He entered a conditional guilty plea after the District Court advised him that the Government would not have to prove that the defendant knew that his act was against the law nor that the skull he removed from government land was an archeological resource.

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. The conditional guilty plea was entered under Federal Criminal Rule 11(a)(2). Pursuant to an agreement with the Government and with the approval of the district court, Lynch preserved for appeal the *mens rea* issue. Therefore, the only question before us is whether the trial court erred in holding that the indictment, which charged a

knowing violation of § 470ee(a) did not require proof that the defendant knew that a human skull he picked up and took home was an "archeological resource."

The facts are not disputed. The defendant concedes that he saw a human skull partially exposed and partially covered by soil, that he scraped away the dirt with his hands and lifted the skull from a rocky hillside. There is no evidence that the defendant had reason to know that the location was a burial place, or that the skull was of ancient origin. There is no evidence that the defendant knew that the skull had any monetary value, or that its removal would create government funding for contractors.

Expert witnesses brought into the case after the defendant's conduct was reported to authorities could not fix the age of the skull until after a sample of bone was removed and sent to a laboratory for carbon dating. The skull turned out to be 1400 years old, and the costs associated with the investigation and restoration of the site where the skull was found amounted to something in excess of $7,000, which the Government says the defendant must pay for violating the statute. The Government says these later discovered facts are the risks one assumes when picking up human bones on government land.

We have examined the limited judicial authority we have found on the criminal liability of one who is charged with a knowing violation of a statute denouncing as a crime the removal of an "archeological resource," and are satisfied that the Government must prove that the defendant knew more than that the object he removed was a human skull.

In the summer of 1997, Lynch was a twenty-three year old high school graduate. He and two friends went deer-hunting on Heceta Island, an uninhabited island in southeast Alaska. The island contains an area identified by a report conducted for the Alaska Native Claims Settlement Act as the "Warm Chuck Village and Burial Site," which contains the remains of an Alaska native village. There is no evidence that Lynch knew of the quoted report.

When the others were packing up camp, Lynch went looking for caves. After walking over some boulders, he looked down and saw what looked like the back of a skull. Lynch picked it up, and knew it was a skull. He then picked up some rocks, found other bones, and cleared away some dirt with his hands. He put the rest of the bones back in place and "took the skull back home to do some research on it." The skull was not found in a cemetery or apparent burial ground, but rather was in the side of a hill, under a rock outcropping. The skull was found outside of the area previously identified as archeologically significant by anthropologists and Native historians.

On August 5, 1997, U.S. Forest Service agents interviewed Lynch. Lynch agreed to the interview, gave the agents the skull, and directed the agents to the location of the bones. During the interview, Lynch admitted that he knew the skull was old: "So I mean, it's definitely been there for a while. Oh, man, it's definitely old. There's not a stitch of clothin' or nothin' with it."

The regional Forest Service archeologist stated that in his opinion the skeleton had been deliberately placed or interred at the site, but he could not determine its age. The archeologist called in a physical anthropologist to determine the age of the skull. Osteological examination of the skull and the skeleton failed to provide sufficient evidence of their antiquity for ARPA prosecution. In order to determine whether the skull was at least 100 years old, and therefore an "archeological resource" under 16 U.S.C. § 470bb(1), authorities cut out a section of the skull and had the fragment's age measured by carbon dating. The analysis showed an age of at least 1400 years.

Lynch was indicted for felony violation of ARPA, 16 U.S.C. § 470ee(a). Lynch

filed motions to dismiss the indictment and to disclose the grand jury transcript. He argued that the indictment had omitted the requisite statutory scienter and that the grand jury had been incorrectly instructed. The district court denied Lynch's motions, and concluded that taking a skull was "*malum in se,*" defined in Black's Law Dictionary 959 (6th ed.1990) as "a wrong in itself; an act or case involving illegality from the very nature of the transaction, upon principles of natural, moral, and public law." The court held that to fulfill the statutory scienter requirement, the accused need know only that he was excavating, removing, damaging and/or otherwise altering a human skull out of a grave. 16 U.S.C. § 470ee(a) provides:

> No person may excavate, remove, damage, or otherwise alter or deface, or attempt to excavate, remove, damage, or otherwise alter or deface any archeological resource located on public lands or Indian lands unless such activity is pursuant to a permit issued under section 470cc of this title, or the exemption contained in section 470cc(g)1 of this title.

The statute's penalty provision 16 U.S.C. § 470ee(d) provides:

> Any person who knowingly violates, or counsels, procures, solicits, or employs any other person to violate, any prohibition contained in subsection (a),(b), or (c) of this section shall, upon conviction, be fined not more than $10,000 or imprisoned not more than one year, or both: Provided, however, that if the commercial or archaeological value of the archaeological resources involved exceeds the sum of $500, such person shall be fined not more than $20,000 or imprisoned not more than two years, or both . . .

Lynch's argument that the Government must prove that he knew he was breaking the law has been rejected in a number of somewhat similar cases. *See United States v. Sherbondy,* 865 F.2d 996 (9th cir.1988) (holding that the statute's use of the phrase "knowingly violates subsection . . . (g) of section 922" does not imply that knowledge of the law is required to satisfy the *mens rea* requirement of the statute). In *United States v. Int'l Minerals & Chem. Corp.,* 402 U.S. 558, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971), which also held that "knowingly violates" language did not imply that knowledge of the law was required, the Court explained:

> "We . . . see no reason why the word 'regulations' should not be construed as a shorthand designation for specific acts or omissions which violate the Act. The Act, so viewed, does not signal an exception to the rule that ignorance of the law is no excuse . . ."

*Id.* at 561, 91 S.Ct. 1697.

We turn next to *Staples v. United States,* 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) (holding that the Government must prove that the defendant knew the weapon he possessed was a machine gun, not that he knew his possession was against the law) and *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952) (holding that a statute punishing "knowing conversion" required that the defendant have knowledge of the facts, though not necessarily the law that made the taking a conversion). We find these cases instructive, in that the defendant must know that he is in fact performing an act, whether or not he knows that the act has been criminalized by statute.

■ The Government argues that ARPA's use of "knowingly" rather than "wilfully" reflects legislative intent that the statute not require a knowledge that one's actions are against the law. We agree. *See United States v. Flores,* 753 F.2d 1499, 1505 (9th Cir.1985) (declining to hold that knowledge of the law was necessary absent the word "willful" in the statute and a clear Congressional intent). But this case does not turn on Lynch having known the law, it turns on whether he knew, or should reasonably have been expected to know, that the human remains he found

were "archeological resources" and that they possessed value other than the satisfaction of his curiosity.

The legislative history of the ARPA appears to reject the requirement of specific intent. Appellant states in his brief: "[t]he legislative history does not fully clarify the intent of its framers with respect to the *mens rea* issue." He offers a number of remarks from the legislative debate. For example, the bill's House sponsor, Congressman Morris Udall, stated:

> I want to take just a moment to explain to the House why this Legislation is needed. In the West, where most of the public lands of the United States are located, and where the archaeological resources are rich, there is a growing tendency on the part of a few industrious entrepreneurs to locate likely sites of ancient ruins to move in a backhoe or similar equipment, and to proceed to mine the area for any artifacts they might unearth ... The bill now before the House attempts to correct this situation. It prohibits the wanton destruction of archeological sites and resources located on the public domain or on Indian lands ... It establishes effective penalties for those who knowingly violate the prohibitions in the act.

125 Cong. Rec. H17391, 17393 (daily ed. July 9, 1979) (statement of Rep. Udall). Congressman Udall addressed the concerns over prosecution of the "casual visitor" who stumbles across an artifact and decides to keep it:

> Certainly, no sponsor of this legislation and probably no reasonable person would want some overzealous bureaucrat to arrest a Boy Scout who finds an arrowhead along a trail or a purple bottle out in the desert. The bill is not drafted for this purpose at all. It is expected that those responsible for the administration and enforcement of this act will use good judgment and exercise moral persuasion where violations unwittingly occur. The thrust of this act is

not to harass the casual visitor who happens to find some exposed artifact, but to stop the needless, careless, and intentional destruction of archeological sites and organized and intentional theft of the valuable remains of previous civilizations.

*Id.* at 17394. Others in Congress echoed Representative Udall's concerns. Speaking to the Senate Subcommittee on May 15, 1979, Senator Domenici stated:

> [A]s you might suspect there are many innocent people who would be adversely affected; Boy Scouts, ... civic groups, and the like, who because of a lack of information on the subject of ownership might unknowingly enter onto public lands with really no malice or knowledge whatsoever ...
>
> We also have broad civil authority for the lesser kind of technical offenses that I have described. We want the felony jurisdiction to be only for extreme cases where there is both knowledge and a very valuable product, and the remainder would be misdemeanors. And if they are misdemeanors they should require knowledge.

*Archaelogical Resources Protection Act of 1979: Hearing on S. 490 Before the Subcomm. on Parks, Recreation, and Renewable Resources,* 96th Cong. 96–26 (1979) (statement of Sen. Pete V. Domenici). *See also id.* at 41 (statement of Dr. Ernest Connally, Assoc. Dir., Heritage Conservation and Recreation Service, Dept. of the Interior) (describing the intended subjects of criminal prosecution as sophisticated operators, not "mere pilfer[ers]").

The Report to Accompany H.R. 1825, the Archeological Resources Protection Act of 1979, 96th Cong. 1st Sess. (1979), however, clearly rejects the specific intent argument propounded by Lynch. It states:

> This section also provides criminal penalties for those who knowingly commit one of the prohibited acts. This is a general intent crime, and therefore a

person could be convicted if he acted of his own volition and was aware of the acts he was committing.

H.R.Rep. No. 96–311, at 11 (1979). We hold that knowledge of the law is not necessary. But knowledge of the facts that make a trespass a felony is necessary.

For a felony conviction, the prosecution should have to prove that a person charged under ARPA knew, or at least had reason to know, that the object taken is an "archeological resource." Picking up a skull is not in every case *"malum in se,"* nor does every case "involve public welfare." A prosecution for knowingly violating a statute enacted to criminalize removal of archeological resources must follow at least minimal traditional *mens rea* principles in order to give meaning to "knowingly."

■ In most cases, a requirement that a violation be "knowing" means that the defendant must "know the facts that make his conduct illegal." *Staples,* 511 U.S. at 606, 114 S.Ct. 1793. In *Morissette,* the Supreme Court examined the *mens rea* requirement of a statute that stated: "Whoever ... knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States ... [s]hall be fined ..." 342 U.S. at 248, 72 S.Ct. 240 (citing 18 U.S.C. § 641). The Court held that the term "knowingly" required that the defendant have knowledge of the facts that made his taking of shell casing brass on federal land a conversion, in particular, that the property belonged to the United States before criminal liability could attach. *Id.* at 271, 72 S.Ct. 240. Similarly, in *Staples,* 511 U.S. at 623, 114 S.Ct. 1793, the Court held that the Government must prove beyond a reasonable doubt that the defendant knew the weapon he possessed had characteristics that brought it within the statutory definition of a machine gun in order to be convicted for failing to register a machine gun.

The concerns that led the *Staples* Court to read a knowledge requirement into the statute exist here. As in *Staples,* there exists here the potential for harsh penalties to be applied to those who acted in ignorance of a fact that the statute makes an otherwise noncriminal act a crime: a skull may or may not be an archeological resource, just as it may, or may not be evidence of a recent accident or of a recent crime. A felony conviction carries a possible fine of $10,000 and up to a year in prison, or if the value or cost of restoration of an archeological resource amounts to $500, up to $20,000 and up to 2 years in prison. *See* 16 U.S.C. § 470ee(d). As the legislative history suggests, there may be "casual visitors" to public lands whose souvenir collection, depending on the facts, may be merely thoughtless, but not felonious. Lynch may or may not have been a wholly innocent casual visitor. His interview revealed that he was interested in, or at least curious about, artifacts associated with early inhabitants of the land. He admitted that he was hoping to find something in his cave wanderings, and that he liked to collect things. He even admitted to agents that he knew he had done something wrong. Nevertheless, the *Staples* concern regarding strict penalties to unwitting violators counsels against convicting an unwitting person of a felony when nobody knew until after a lengthy investigation that the object taken was more than 100 years old, and that the costs associated with restoration of the site would exceed $500. Like the widespread tradition of gun ownership in the United States that animated the *Staples* court's decision, 511 U.S. at 610, 114 S.Ct. 1793, there also exists a widespread tradition of arrowhead and artifact collecting.

The Government, like the district court, casts Lynch's conduct in a different light, and claims that *Staples'* is inapposite because there is no acceptable tradition of grave robbing. However, the Government did not charge Lynch with grave robbing, and the record does not demonstrate that

Lynch knew or should have known that the skull was in a grave.

In yet another case, *United States v. X–Citement Video, Inc.*, 513 U.S. 64, 78, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994), the Court considered a statute making it criminal to "knowingly transport or ship in interstate or foreign commerce by any means including by computer or mails, any visual depiction if (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (B) such visual depiction is of such conduct." 18 U.S.C. § 2252. The Court held that the term "knowingly" applied to the age of the performers and to the sexually explicit nature of the material in a child pornography statute, despite the natural grammatical reading of the Protection of Children Against Sexual Exploitation Act under which the scienter element would apply only to the transport element. *See X–Citement Video*, 513 U.S. at 69–71, 78, 115 S.Ct. 464. The court explained: "*Morissette*, reinforced by *Staples*, instructs that the presumption in favor of a scienter requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct." *Id.* at 72, 115 S.Ct. 464. Because removing objects that are not "archeological resources" from public land is not a violation of ARPA, the knowingly requirement should apply to the term "archeological resources," as well as to the prohibited act of removing.

The Government seeks to characterize the case as a "public welfare" case—or as the district court puts it, a "*malum in se*" case for which an exemption to the traditional *mens rea* requirements exists. The Government argues that it is not prosecuting "otherwise innocent conduct" because "any person on public land cannot believe that removal of an artifact, human or otherwise, can be accomplished legally without some type of regulation." The average citizen may be expected to know that the Administrative Society has become so pervasive that in a national forest everything that is not expressly permitted must nec-

essarily be forbidden. However, the concerns expressed in the legislative history seem to belie this claim. Representative Udall and others' comments acknowledge the possibility that boy scouts and other "casual visitors" might innocently and inadvertently remove an artifact from the public domain.

■ The examples of public welfare cases relied on by the Government discuss conduct that is, but for the statute prohibiting it, considerably less innocent than taking a skull from public land. In *United States v. LaPorta*, 46 F.3d 152 (2nd Cir. 1994) (rev'd on other grounds *Sicurella v. United States*, 157 F.3d 177 (2nd Cir. 1998)), the court held that a statute proscribing the destruction of government property by fire or explosives did not require that defendants know they were destroying government property, because arson is not innocent conduct. Similarly, in *United States v. Feola*, 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975), the Supreme Court held that a statute making it an offense to assault federal officers required no more than proof of an intent to assault and that it was not necessary under the substantive statute to prove that the defendants knew the undercover agent they assaulted were federal officers. In *United States v. Sablan*, 92 F.3d 865 (9th Cir.1996), we held that the Government, under a computer fraud statute, need not show an intent to destroy government files, but rather only the intent to access a "federal interest" computer without authorization. We noted that accessing the computer was already a violation. The argument that picking up a partly exposed skull on a rock surface in a national forest without the knowledge that it is an "archeological resource" is inherently felonious conduct like arson, assault, or breaking into a federal interest computer is a stretch this court will not make in order to affirm a dubious felony conviction.

The Government urges that the stretch is justified by our recent decision in *United States v. McKittrick*, 142 F.3d 1170

(9th Cir.1998). In *McKittrick,* we dealt with a provision of the Endangered Species Act ("ESA") that provided penalties for "knowing violations" of any regulations issued under the statute. *Id.* at 1173, n. 1. We held that the defendant did not have to know that he was shooting a wolf, which was listed as an endangered species, to violate regulations relating to experimental population. *See id.* at 1177. The court relied on Congress's 1978 decision to change the wording of the section from "wilfully" to "knowingly" and on the agreement of the Fifth and the Eleventh circuits "in related situations." *Id.* The opinion does not expressly address the issue of whether the case involved a "public welfare" offense or whether shooting an animal that is not a wolf constitutes "otherwise innocent conduct." *Id.* The Government points to similarities in the purposes of the statutes, conservation of resources, their language, "knowingly violates," and even the nature of the element at issue, knowledge of the nature of the object of the defendant's act, in support of its contention that the Government need not prove that Lynch knew the skull was an "archeological resource." The reasoning of *McKittrick* would support a conviction if Lynch, at the time of the charged event, had reason to know that he had picked up and removed a human skull, even though he did not know it was more than a hundred years old.

*McKittrick* is distinguishable for a variety of reasons. First, it dealt with the ESA, where, as a Fifth Circuit case *McKittrick* court cites for support explained, "the plain intent of Congress in enacting this statute was to halt and reverse the trend toward species extinction, *whatever the cost.*" *United States v. Ivey,* 949 F.2d 759, 766 (5th Cir.1991) (emphasis added) (citation omitted). With respect to the ARPA, however, the legislative history suggests that Congress was concerned about the risk of penalizing archeologically naive visitors to public lands.

Second, *McKittrick* involved misdemeanor penalties; whereas, this appeal involves felony penalties. *See Morissette,* 342 U.S. at 260, 72 S.Ct. 240. One of the Fifth Circuit cases cited in *McKittrick* emphasized that the violation of the ESA was a misdemeanor to distinguish it from cases requiring *mens rea* in criminal statutes. *See United States v. Nguyen,* 916 F.2d 1016, 1019 (5th Cir.1990).

We note also that the Eleventh Circuit case cited by *McKittrick* to support the argument against a *mens rea* requirement for an ESA violation in fact supports Lynch's stricter specific intent argument. *United States v. Grigsby,* 111 F.3d 806 (11th Cir.1997). In *Grigsby,* the court decided that the "knowingly violates" language of a criminal penalty provision of the African Elephant Conservation Act ("AECA") required specific intent. *Id.* at 819. The court relied not only on the language, but also on legislative history to reach this distinction between misdemeanor and felony statutes.

Lynch claims that here the existence of § 470ff, which provides for civil penalties for violations of ARPA and omits the word "knowingly," reflects Congress's intent to punish criminally "only those who were aware of the very nature of the object they were excavating." Senator Domenici's and Congressman Udall's remarks to Congress bolster this interpretation, as does the Court's holding in *X–Citement Video.* The Court examined 18 U.S.C. § 2252, a statute remarkably similar to the one at issue here, and ultimately concluded that the Government had to prove knowledge of sexually explicit conduct and knowledge that the depiction involved the use of a minor. *See* 342 U.S. at 269, 72 S.Ct. 240 (acknowledging the potential absurdity that would result if people who unknowingly transported items were protected, and people who knowingly transported items that they had no idea contained prohibited material were not).

We hold that under 16 U.S.C. § 470ee(a), the Government must prove

that a defendant knows or had reason to know that he was removing an "archeological resource." Accordingly, the judgment is vacated to permit Lynch to withdraw his plea, and the case is remanded for further proceedings consistent with this opinion.

VACATED AND REMANDED