**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**No. 96-31247**

_____


**UNITED STATED OF AMERICA,**

**Plaintiff-Appellee,**


**VERSUS**


**TERENCE MILLSAPS, MICHAEL JOHNSON**
**AND HERMAN A. STEVENSON III,**

**Defendant-Appellants.**

_____

Appeals from the United States District Court
for the Eastern District of Louisiana
_____

October 8, 1998

Before REYNALDO G. GARZA, HIGGINBOTHAM and EMILIO M. GARZA, Circuit
Judges.

PER CURIAM:

In November, 1995, Trent Summers, a DEA informant, met with
the defendants, Terence Millsaps and Michael Johnson in New
Orleans. There they discussed the possibility of entering into a
drug transaction. Summers told Millsaps that he could provide him
with 10 kilograms of cocaine.

On December 1, 1995, Summers introduced Andrew Chambers, a DEA
informant, to Millsaps and Johnson as a supplier of cocaine from

Los Angeles.  They agreed that Chambers would provide Millsaps and Johnson with 10 kilograms of cocaine at a price of $14,500 per kilogram or a total of $140,000.

On December 4, 1995, Chambers, Summers, Millsaps, Johnson and defendant Herman Stevenson had a telephone conversation where they agreed to meet to complete the drug transaction in a Sam's Wholesale Club parking lot.  Inside Stevenson's Land Cruiser,[1] Chambers saw a firearm and money to be used in the transaction. Chambers then made the prearranged arrest signal and the DEA intervened. The agents arrested Stevenson, Millsaps and Johnson and seized a .45 caliber pistol and $39,863.00 from Stevenson's Vehicle.

On December 15, 1995, a grand jury for the Eastern District of Louisiana, returned a three-count indictment against Stevenson, Millsaps and Johnson.  All three were charged with conspiracy to possess cocaine with intent to distribute and attempted possession of cocaine with intent to distribute.  In addition, Stevenson was charged with the use of a firearm in relation to the drug trafficking crime.

On March 7, 1996, the grand jury returned a sixteen count superseding indictment against Stevenson, Millsaps, and Johnson. The new indictment added three counts charging Stevenson with heroin trafficking and ten counts charging him with money

---

[1]A Toyota Land Cruiser is a 4x4 sport-utility vehicle with a enclosed cabin area.

laundering, all stemming from activities unrelated to Millsaps and Johnson. Also included in the indictment were the three counts against the defendants in the original, December 15 indictment.

On March 18, 1996, Yvonne Hughes enrolled as counsel for Michael Johnson. On April 9, 1996 the government filed a Motion to Disqualify Defense Counsel Yvonne Hughes due to a conflict of interest in her representation of Johnson and government witness Prestiss Martin. On May 1, 1996, the court granted the government's motion to disqualify defense attorney Yvonne Hughes and on May 16, 1996, the court denied Johnson's motion to reconsider its decision.

On June 19, 1996, the district court granted a motion by Millsaps and Johnson for a severance. The court feared that a trial on all counts of the superseding indictment would prejudice Millsaps and Johnson with evidence of Stevenson's unrelated heroin trafficking. The district court ordered trial to proceed first against Millsaps, Johnson, and Stevenson based solely on the original three count indictment.

On November 13, 1996, the jury convicted Millsaps and Johnson on the two counts relating to them, and it found Stevenson guilty on all three of his counts. On November 22, 1996, the government moved to dismiss the 13 counts of the superseding indictment concerning Stevenson's heroin trafficking and money laundering. On February 26, 1996, after enhancing his sentence under the career offender provisions of the Sentencing Guidelines, the court

3

sentenced Millsaps to 450 months of imprisonment.

On April 30, 1997, the district court granted the government's motion for an upward departure and sentenced Stevenson to 295 months of imprisonment. All three defendants timely appealed to this Court.

## *Discussion*

### *I. Denial of Appellants' Motion for Mistrial.*

During the government's case-in-chief, prosecutors played taped conversations between the DEA informants and the defendants to the jury. After one of the tapes was played, the government asked its informant, Chambers, to testify to the meaning of some of the terms used in the conversation:

Q. Now, Mr. Chambers, you heard that portion of the conversation, didn't you?

A. Yes, I did.

Q. Who's speaking to who in this portion of the conversation?

A. I'm talking to Millsaps.

Q. Is he speaking to you?

A. Yes.

Q. Is there some conversation in here where you're talking about the "nickel." [sic] What do you mean by the "nickel" there?

A. I'm talking about five keys.

Q. And there is also conversation where you're told that

4

> this other person [Stevenson] is "old players game is
> that boy." At that time what did you understand that to
> mean?
>
> A.   He's a heroin dealer.
>
> Q.   And when you were told "He jumping on this time on the
> strength of me," at that time, what did you understand
> that to mean?
>
> A.   Millsaps, the only reason that he had switched from the
> heroin to the coke was because Millsaps told him it was
> cool and straight; there was no problem with it.

The defense objected to this testimony, arguing that heroin charges were not before the jury. The court sustained the objection and gave the jury a cautionary instruction: "I have sustained an objection to any reference to the use of heroin, and the jury is instructed to disregard anything to do with the use of heroin." The defendants, however, moved for a mistrial, which the court denied. All the defendants now assert that this was an error.

The defendants contend that the district court's pretrial rulings barred any reference to heroin at trial, so that Chambers' testimony was so prejudicial that it warranted a mistrial. The defendants' claim, however, lacks merit because the court never made such an explicit pretrial ruling. Rather, before trial the court only severed the heroin/money-laundering charges against Stevenson from the cocaine charges against all three defendants because of its concern that:

> [i]f the indictment forebodes the trial evidence, it is
> obvious that much of the trial will be concerned with
> Stevenson's alleged activities as a heroin dealer and money
> launderer. The jury might infer, correctly or incorrectly,

5

> that anyone associated with Stevenson must be involved in
> narcotics trafficking, given the likely nature of the
> evidence. Because of the overwhelming evidence which will
> probably be introduced against Stevenson, the Court finds that
> Millsaps and Johnson will be prejudiced by going to trial with
> him as to [the heroin and money laundering counts].

The defendants never filed a motion *in limine* to bar references to heroin in the cocaine trial, nor did the court ever make such a ruling *sua sponte*. The trial court properly sustained the defendants' trial objections to the testimony about heroin, since those references constituted evidence of other crimes. However, the defendants are mistaken in their assertion that the government's eliciting of this testimony violated the terms of a pretrial order.

In light of these facts, it is clear that the district court did not abuse its discretion in denying the defendants' motion for a mistrial. The refusal to grant a mistrial based on the admission of prejudicial evidence is reviewed for an abuse of discretion. *United States v. Paul*, 142 F.3d 836, 844 (5th Cir. 1998). "If the motion for mistrial involves the presentation of prejudicial testimony before a jury, a new trial is required only if there is a significant possibility that the prejudicial evidence had a substantial impact upon the jury verdict, viewed in light of the entire record." *Id*. In addition, a prejudicial remark may be rendered harmless by curative instructions to the jury. *United States v. Nguyen*, 28 F.3d 477, 483 (5th Cir. 1994). Furthermore,

6

this Circuit also gives great weight to the trial judges' assessment of the prejudicial effect of the remark. *Id.*

The government contends that the references to heroin were admissible on *res gestae* grounds. However, whether this is true or not is irrelevant. Even if the reference to Stevenson's heroin activities was prejudicial to the defendants, the trial court struck that testimony and gave a curative instruction. Also, "juries are presumed to follow their instructions." *Zafiro v. United States*, 506 U.S. 534, 540 (1993), and the defendants do not explain how the court's curative instruction was inadequate.

At trial there was substantial evidence of the defendants' guilt. Thus, it is highly unlikely that any of the cocaine-conspiracy convictions were derived from the jury's concerns about heroin. Rather, to the extent that the jury disregarded the court's curative instruction, the admission of the heroin evidence is harmless. *See United States v. Sotelo*, 97 F.3d 782, 797-98 (5th Cir. 1996) (finding harmless the admission of hearsay evidence when the evidence was later stricken, a curative instruction was given, and the evidence of guilt was overwhelming), *cert. denied*, *Quintana v. United States*, 117 S.Ct. 620 (1996). Therefore, the defendants have failed to establish that the heroin testimony was so overwhelmingly prejudicial as to make the court's denial of a mistrial an abuse of discretion.

7

## II. Lack of Credibility of Government's Chief Witness

This Circuit, when reviewing a challenge to the sufficiency of the evidence, must determine whether a rational trier of fact could have found that the evidence established guilt beyond a reasonable doubt. *United States v. Ivey*, 949 F.2d 759, 766 (5th Cir. 1991), *cert. denied*, *Wallace v. United States*, 506 U.S. 819 (1992). It must also view all evidence and any inferences that may be drawn from it in the light most favorable to the government. *Ivey*, 949 F.2d at 766. In addition, "[i]t is the sole province of the jury, and not within the power of this Court, to weigh conflicting evidence and evaluate the credibility of witnesses. *Id*. at 767. The jury has the unique role to "judge the credibility and evaluate the demeanor of witnesses and to decide how much weight should be given to their testimony." *United States v. Layne*, 43 F.3d 127, 130 (5th Cir. 1995), *cert. denied*, 514 U.S. 107 (1995). This narrow standard of review for sufficiency of the evidence challenges "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

The defendants assert that the evidence of their guilt was

insufficient because their convictions rested on the testimony of Chambers, a government informant who lacked credibility. Even assuming Chambers' testimony was the only evidence presented against the defendants their argument remains meritless. It is clear that Chambers is not the most pristine of witnesses. Chambers has been paid over $1,000,000 by the DEA for his testimony in past cases, he cheated on his taxes, and he beat his wife. In light of these facts however, the jury still chose to convict the defendants. Therefore, because the jury has the sole power to weigh and evaluate the credibility of each witness and their verdict was not so incredible, it would be unjustified and improper for this Court to intervene.

### III. Determination of Amount of Cocaine Involved in the Conspiracy

At sentencing, the trial court found that the amount of cocaine involved in the conspiracy was 10 kilograms. The Sentencing Guidelines catagorize drug offenses by the amount of drugs involved. One such category, which the district court applied to the defendants, covers conspiracies to possess with intent to distribute between 5 and 15 kilograms of cocaine. *See* U.S.S.G. § 2D1.1(C)(4).

Millsaps argues that the district court erred in finding that the crime involved 10 kilograms of cocaine. He contends that the

only evidence of a 10 kilogram conspiracy came from Chambers' ambiguous testimony and that Chambers is an an unreliable government informant. Otherwise, Millsaps asserts, that the evidence pointed to a much smaller conspiracy. Millsaps notes that the conspirators agreed to a price of $14,500/kilogram, but when arrested they were found to be carrying only $38,863 in cash. Therefore, Millsaps concludes that the conspiracy must have involved only a purchase of less than 3 kilograms of cocaine because the defendants possessed insufficient cash to procure any more.

This Circuit has firmly established that the burden of proof at sentencing is usually by a "preponderance of the evidence." *United States v. Lombardi*, 138 F.3d 559, 562 (5th Cir. 1998). However, we have also recognized that in some rare circumstances that the "beyond a reasonable doubt" standard may be more appropriate. *United States v. Mergerson*, 4 F.3d 337, 343 (5th Cir. 1993) *cert. denied*, 510 U.S. 1198 (1994). In these situations "a particular fact relevant to sentencing dramatically alters the sentencing options of the court to the disadvantage of the defendant." *Id*.

This Court, as in *Mergerson*, is quite reluctant to part from the preponderance of the evidence standard in a non-capital case and will not do so. Although the determination of the quantity of drugs involved in this conspiracy had a substantial impact on

Millsaps' sentence, it does so in every other drug case as well. To accept a higher burden of proof under the facts of this case would cause us to impose a higher burden of proof in every narcotics prosecution. We routinely employ the preponderance of the evidence standard in calculating the quantity of drugs involved in drug crimes, and we will not depart from that well settled practice.

A district court's factual findings for sentencing purposes are reviewed for clear error. *See United States v. Misher*, 99 F.3d 664,671 (5th Cir. 1996), *cert. denied*, *Cobb v. United States*, 118 S.Ct. 73 (1997). This deferential standard of review specifically covers a district court's determination as to the amount of drugs involved in the narcotics offense. *See United States v. Mir*, 919 F.2d 940 (5th Cir. 1990). Furthermore, the clearly erroneous standard of review protects the district court's determination of the amount of drugs involved in an offense. *Lombardi*, 138 F.3d at 562.

The district court's finding that the conspiracy involved 10 kilograms of cocaine was not clearly erroneous. At trial, Chambers testified that he understood that their initial transaction was to involve 5 kilograms of cocaine, with a follow-up transaction to involve another 5 kilograms if everything went well the first time. Thus, the defendants intended to purchase 10 kilograms of cocaine in two installments of 5 kilograms each. Therefore, the district

11

court did not clearly err in concluding that a preponderance of the evidence pointed to a 10 kilogram conspiracy.  Furthermore, even if the transaction involved only 5 kilograms of cocaine, it would not change the offense level of the crime.  *See* U.S.S.G. § 2D1.1(C)(4) (covering 5 to 15 kilograms of cocaine).  The mere fact that the defendants were caught with only enough money to purchase less than 3 kilograms of cocaine does not outweigh the testimony indicating that they intended to purchase 10 kilograms.

### IV. Sentencing of Millsaps as a Career Offender.

Millsaps asserts that the district court erred in sentencing him as a career offender.  Millsaps' Presentence Investigation Report's (PSI) reported that he had a 1986 federal felony conviction for bank robbery and a 1991 state felony conviction for aggravated battery.  Millsaps objected to the PSI's classification of him as a career offender, however, he offered no evidence suggesting that the PSI report of his criminal history was inaccurate.  Instead, Millsaps suggests that once he objected to the PSI, the government was required to present proof of his convictions.  However, this assertion is without merit.

To support his contention, Millsaps relies on *United States v. Johnson*, 823 F.2d 840, 842 (5th Cir. 1987), in which we refused to enhance a sentence based solely on a government attorney's disputed

accusations about the defendant's past crimes.  As we stated in *Johnson*, however, "the reports upon which [a] district judge bases the sentence must be reliable." *Id.*  PSI's qualify as such reliable reports.  In *United States v. Rodriguez*, 897 F.2d 1324, 1327-28 (5th Cir. 1990), *cert. denied*, 498 U.S. 857 (1990), we held that a district court is entitled to rely entirely upon the facts contained in a PSI, even if a defendant objects to those facts, if the defendant does not present any rebuttal evidence.  The defendant must show the evidence in which the district court relied upon in sentencing was materially untrue. *Rodriguez*, 897 F.2d at 1328.  Millsaps did not present any evidence suggesting that the PSI's detailing of his criminal record was erroneous.  Accordingly, the district court did not clearly err in relying upon the PSI to conclude that Millsaps was a career offender.

## V. Forced Recusal of Johnson's Attorney

It was not an error for the district court to disqualify Yvonne Hughes as Johnson's attorney.  A district court's disqualification of a defense attorney for conflict of interest is reviewed for abuse of discretion. *Sotelo*, 97 F.3d at 791.  The Supreme Court has previously upheld the disqualification of defense counsel over the defendant's Sixth Amendment objection when the counsel also represented a potential government witness.  *See*

13

*United States v. Wheat*, 486 U.S. 153 (1988).

On April 9, 1996, the government filed a motion to disqualify Yvonne Hughes as Johnson's defense counsel because Hughes had previously represented a government witness in the case, Prentiss Martin. Hughes contended that she no longer represented Martin, and Martin offered to waive the attorney-client privilege for purposes of this case. Nevertheless, on May 6, 1996, we dismissed the appeal for want of prosecution, but later reinstated it on October 3, 1996. Finally, on November 8, 1996, Johnson appeared in open court and stated under oath that he wished to proceed to trial with his present counsel and no longer desired to pursue the appeal from the disqualification ruling.

Nevertheless, Johnson now asserts that his waiver of an appeal was not effective, alleging that the colloquy between the court and himself regarding the waiver was perfunctory and he was not fully informed of his rights. Johnson essentially complains of an error he invited himself, a situation we normally will not tolerate. *See United States v. Lewis*, 524 F.2d 991, 992 (5th Cir. 1975). Therefore, his contention is meritless.

Although Hughes had terminated her relationship with Martin, and Martin agreed to waive his attorney/client privilege, the potential still existed that Hughes would have divided loyalties. As the *Wheat* court summarized:

> The District Court must recognize a presumption in favor of the petitioner's counsel of choice, but that presumption may

14

be overcome not only by a demonstration of actual conflict but by a showing of serious potential conflict.  The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgement of the trial court.

*Id*. at 164.  It is evident that the potential for divided loyalties here was "serious" enough to justify the district court's exercise of discretion in disqualifying Hughes.

### VI.  *Johnson's Multiple Offender Enhancement*

On November 8, 1995, the government filed a Bill of Information to establish Johnson's prior conviction pursuant to LA.REV.STAT. 40:967(C)(2) for possession of "crack" cocaine.  Based upon this conviction, the government petitioned to have Johnson sentenced as a multiple offender under 21 U.S.C. § 851 (d)(1).  Subsequently, on November 13, 1996, Johnson was convicted and timely filed an objection to the multiple Bill.  However, the Motion to Quash was denied and the trial court sentenced Johnson as a multiple offender.

Johnson asserts, without citation, that his conviction for possession of "crack" would constitute a misdemeanor in some other states, and therefore, the government would not treat him as a multiple offender if his conviction had been elsewhere. Accordingly, Johnson argues that the government has no compelling interest under the law to enhance his sentence because he would be

15

treated differently from other defendants similarly situated.

We rejected the identical argument in *United States v. Kubosh*, 63 F.3d 404, 405-07 (5th Cir. 1995) *vacated on other grounds*, *Bailey v. United States*, 116 S.Ct 1012 (1996), *reaffirmed on these grounds*, *United States v. Kubosh* 120 F.3d 47, 48 (5th Cir. 1997)("*Kubosh II*"). In *Kubosh*, we noted that in enacting the multiple-offender provisions of the narcotics laws, "Congress was well aware that different states classify similar crimes differently. Congress' deference to the states in this matter is not irrational." *Kubosh*, 63 F. 3d at 407. Therefore, we upheld the enhancement of Kubosh's sentence due to his multiple offender status despite the fact that his prior Texas convictions might have been treated as misdemeanors in other jurisdictions. *Id.* at 406.

The Supreme Court vacated *Kubosh* in light of *Baily*. On remand, we reversed Kubosh's conviction for carrying a firearm in relation to a drug offense. *See Kubosh II*, 120 F.3d at 48-9. Nevertheless, the *Kubosh II* court "again reject[ed] Kubosh's other contentions on appeal, for the same reasons in [Kubosh]." *Id*. at 49. Thus, although Kubosh was vacated by the Supreme Court, we readopted all of the reasoning of *Kubosh* not pertinent to *Baily*, including the refutation of Kubosh's equal protection argument. Accordingly, it is clear that Johnson was properly sentenced by the trial court as a multiple offender.

16

## VII. Upward Departure in Stevenson's Sentence

On January 10, 1997, the government filed a motion for an upward sentencing departure in the sentencing of Stevenson based upon the inadequacy of his criminal history. *See* U.S.S.G. § 4A1.3. Stevenson's PSI suggested a base offense level of 34 and zero history points. The government sought to increase Stevenson's sentence based upon the heroin and money laundering charges filed against him in the superseding indictment that were dismissed following his conviction, as well as uncharged instances of heroin trafficking and tax evasion. At the sentencing hearing the government called an I.R.S. special agent who summarized the government's evidence against Stevenson as it related to each of these alleged crimes.

After considering the government's evidence of other crimes, the district court granted the government's motion for upward departure and increased Stevenson's criminal history from Category I, with a guideline range of 151 to 188 months, to Category III, with a guideline rang of 188 to 235 months of imprisonment. The district court sentenced Stevenson to 235 months.

Stevenson contends that it was a violation of due process for the district court to base the upward departure on evidence of crimes charged in the superseding indictment, but were subsequently dismissed. He complains that the sentencing hearing permitted the

government to prove the heroin and money laundering charges against him utilizing a more lenient burden of proof than it would have faced had it actually sent him to trial for those crimes. However, in *United States v. Ashburn*, 38 F.3d 803 (5th Cir. 1994) (en banc), our Court held that a district court could depart upward under § 4A1.3 to account for conduct alleged in counts of an indictment that were dismissed pursuant to a plea agreement. Our Court stated that § 4A1.3 expressly authorizes the Court to consider "prior adult criminal conduct not resulting in a conviction." *Id.* at 808 n. 14. It is clear that "if the district court offers 'acceptable reasons' for the departure and the departure is reasonable" that we will affirm a departure from the guidelines. Id. at 807. Because Stevenson's case does not differ significantly from *Ashburn*, this Court rejects Stevenson's due process argument.

Stevenson also asserts that the district court misapplied the Guidelines and its upward adjustment was excessive. The district court considered Stevenson's tax, heroin, and money-laundering activities to be worth one criminal history point each, for a total criminal history of four points. The district court in upwardly departing explicitly relied on this evidence and not upon the six arrests that appear in his PSI. In detailing the point breakdown the district court stated "I'm assigning one point for the IRS, one point for the heroin activities, and one point for the money laundering." While as stated this mathematically would equal

18

three points, both the heroin activities and money laundering activites would have neccessary resulted in incarceration under the guidelines, thus accounting for the additional point. *See* § U.S.S.G. 4A1.1. Therefore, at least one additional criminal history point (beyond the three) would have been appropriate because Stevenson almost certainly would have been sentenced for this conduct had he been convicted.[2] Four criminal history points would properly establish the Category III criminal history for which Stevenson was sentenced. Therefore, the district court did not err in its upward departure.

## VIII.  *Stevenson's Status as a Leader of the Conspiracy*

Stevenson objects to the trial court's finding of an increase in the base level of two points based upon Stevenson's leadership role in the conspiracy. *See* U.S.S.G. § 3B1.1. The district court relied upon Stevenson's status as the financier of the cocaine deal to justify the enhancement. Although it may be a questionable as to whether the financier of a conspiracy deserves a § 3B1.1

---

[2]In calculating the appropriate criminal history category, this Court has previously stated that, "we do not require the district court to go through such a 'ritualistic exercise'. . ." *Ashburn*, 38 F.3d at 809. However, under §4A1.1 of the Sentencing Guidelines, it is more likely than not that one of the dismissed charges would have been categorized under §4A1.1(b) had he been convicted of the charges, thereby accounting for the fourth point. *See Id.* at 808.

19

adjustment for being an organizer of that conspiracy, Stevenson has waived this issue on appeal. Stevenson's appellate brief notes that he objected to the § 3B1.1 enhancement at sentencing and it illustrates his reasons for objection, however, the brief does not request this Court to vacate his sentence on this ground. Rather, Stevenson states: "These factual findings are reviewed for clear error." Stevenson does not wish to abandon his objection to these findings, but understands that his appeal lies with the misapplication of the sentencing guidelines and the error of law in the upward departure. Because Stevenson does not assert any specific error arising from the two level organizer enhancement, nor does he advance any legal argument, this Court considers this issue waived.

*Conclusion*

For the foregoing reasons, we AFFIRM the district court's decisions in all respects regarding the convictions and sentences of all three defendants.