**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 98-10707

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

VERSUS

WILLIAM LEE MONROE,

Defendant - Appellant.

Appeal from the United States District Court
for the Northern District of Texas
June 7, 1999

Before JONES, DUHÉ, and BARKSDALE, Circuit Judges

DUHÉ, Circuit Judge:

A jury convicted William Monroe under 18 U.S.C. § 844(i) for maliciously damaging by means of fire or an explosive a building used in interstate commerce. Monroe appeals, contending: (1) malice requires an intent to start the fire; (2) insufficient evidence of malice; (3) improper jury instructions; (4) the unconstitutionality of § 844(i) as applied to him; (4) reversible error from the district judge's failure to recuse. We affirm.

Monroe stole a gas stove from his apartment when he moved out. Gas seeping from the stove's unstopped gas line caused an explosion the next morning, extensively damaging the apartment building and

injuring two people.

Monroe described his actions on the night he stole the stove. He shut off the gas at the valve and disconnected the flexhose while an accomplice bled gas out of the burners. When Monroe attempted to install the stove in his new apartment, he realized he needed a fitting for the shutoff valve. He and his accomplice returned to the old apartment to remove the fitting. When he tried to remove the fitting, the whole shutoff valve twisted off. Monroe took the entire valve. Monroe's accomplice soon felt lightheaded.

Monroe told the Bureau of Alcohol, Tobacco and Firearms Special Agent: "I've worked with natural gas before and I know that it is very explosive but I did not think it would build up like it did. I thought I could leave the door open about an inch and it would ventilate enough to keep anything from happening. I didn't intend for anyone to get hurt."

Evidence shows that Monroe asked a coworker how to plug the flexline on a stove to prevent gas leakage. His coworker informed him that turning the shutoff valve off would prevent leaking. Evidence also shows that a hardware store across the street from the apartment building sold for approximately $2 plugs that would have stopped the gas flow.

The government prosecuted Monroe under 18 U.S.C. § 844(i) for "maliciously damag[ing] or destroy[ing] . . . by means of fire or an explosive, any building . . . used in interstate or foreign commerce or in any activity affecting interstate or foreign

2

commerce . . . ." 18 U.S.C.A. § 844(i) (West Supp. 1999). Monroe stipulated to everything except "maliciously." The jury convicted him, and he appeals.

THE MEANING OF MALICIOUSLY UNDER § 844(i)

Monroe contends that the plain meaning, legislative history, federal case law, and the common law of arson all require that a defendant intentionally cause an explosion or fire to be convicted under § 844(i). However, "maliciously" for purposes of § 844(i) means "acting 'intentionally or with willful disregard of the likelihood that damage or injury would result.'" United States v. Corona, 108 F.3d 565, 571 (5th Cir. 1997) (quoting United States v. Gullett, 75 F.3d 941, 947 (4th Cir. 1996)). Intent is sufficient but not necessary for a conviction under § 844(i).

SUFFICIENCY OF THE EVIDENCE CONCERNING MALICE

Monroe contends that the evidence is insufficient to prove he intended to start a fire. We review challenges to the sufficiency of the evidence to "determine whether a rational trier of fact could have found that the evidence established guilt beyond a reasonable doubt." United States v. Millsaps, 157 F.3d 989, 994 (5th Cir. 1998). We view all evidence and any inferences therefrom in the light most favorable to the government. See id. The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except guilt. See

3

United States v. Resio-Trejo, 45 F.3d 907, 911 (5th Cir. 1995). In addition, "[i]t is the sole province of the jury, and not within the power of this Court, to weigh conflicting evidence and evaluate the credibility of witnesses." United States v. Ivey, 949 F.2d 759, 767 (5th Cir. 1991).

The evidence is sufficient if Monroe "acted in willful disregard of the likelihood" of damaging the apartment building. Corona, 108 F.3d at 571 (defining "maliciously" as "acting 'intentionally or with willful disregard of the likelihood that damage or injury would result.'"). Monroe admitted he had worked with natural gas before. In addition, Monroe asked in advance about plugging the gas line, indicating awareness of the dangers associated with leaking gas. Monroe removed the entire shutoff valve. Shortly thereafter, his accomplice became lightheaded, indicating that gas was leaking. Monroe made no attempt to plug the leak, although a plug would have cost only about $2. Monroe contends that he believed leaving the door ajar would adequately ventilate the apartment; that he lived with a leaking gas line that never exploded; and that he is borderline mentally handicapped. Viewing the evidence and the inferences therefrom in the light most favorable to the government, a rational juror could have found that the evidence established beyond a reasonable doubt that Monroe acted with a willful disregard of the likelihood of damage.

4

REQUESTED JURY INSTRUCTIONS

The jury instructions defined maliciously as "intentionally or with willful disregard of the likelihood that damage would result from his acts." Monroe challenges the district court's failure to instruct the jury that malice required: (1) the intent to start a fire; (2) more than negligence; (3) more than recklessness; (4) a near certainty that the building would be damaged; (5) an evil intent; and (6) proof that the fire was not an accident.

District courts have substantial latitude in formulating jury charges. See United States v. Webster, 162 F.3d 308, 321 (5th Cir. 1998). Thus, we review challenges to jury instructions and refusals to give jury instructions for abuse of discretion. See id. at 321-22. A refusal to give a requested instruction constitutes reversible error only if: (1) the requested instruction is substantially correct; (2) the actual charge given to the jury did not substantially cover the content of the proposed instruction; and (3) the omission of the instruction would seriously impair the defendant's ability to present his defense. United States v. Jensen, 41 F.3d 946, 953 (5th Cir. 1994).

The judge did not commit reversible error by refusing to give Monroe's requested instructions. First, Monroe's requested instructions that malice required intent to start the fire, near certainty that the building would be damaged, evil intent, and proof that the fire was not an accident do not correctly state the law. See Corona, 108 F.3d at 571 (defining maliciously, as at

common law, as including "wanton and willful burnings without justification or excuse"). Second, the district judge's definition of "maliciously" as "with willful disregard of the likelihood that damage would result" substantially covered Monroe's requested instructions that malice requires more than negligence or recklessness.

Alternatively, Monroe argues that the government reversibly erred by misstating the elements of the offense in its closing argument. The government in its closing argument defined maliciously as in the jury instruction, then summarized the test as whether Monroe was negligent. Monroe objected to that characterization. The judge immediately told the jurors that the legal instructions issued by the judge govern their decision, and instructed them to disregard any inconsistent statements by the lawyers. The judge then ordered the government to restate its argument. The government then again defined maliciously as in the jury instructions. Finally, the judge properly defined maliciously in the jury instructions.

The government's improper statement in a closing argument constitutes reversible error when it affects a defendant's substantial rights. See United States v. Vaccaro, 115 F.3d 1211, 1215 (5th Cir. 1997). We weigh the magnitude of the prejudicial effect of the statements, the efficacy of any cautionary instruction, and the strength of the evidence of the defendant's guilt in determining whether a substantial right has been affected.

6

See id.    The government's misstatement does not constitute reversible error.  The judge's contemporaneous instruction to the jurors that they should follow his legal instructions and disregard any inconsistent legal instructions proffered by the lawyers, followed immediately by the government properly redefining "maliciously," limited any prejudicial effect.

§ 844(i): UNCONSTITUTIONALLY VAGUE AS APPLIED

Monroe argues that § 844(i) is unconstitutionally vague as applied to him, because it does not provide fair notice of its applicability to one who neither intended to harm a building nor intended to cause an explosion. We review whether a statute is void for vagueness de novo.  See United States v. Nevers, 7 F.3d 59, 61 (5th Cir. 1993).  "[T]he void for vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357 (1983).

Section 844(i) prohibits "maliciously damag[ing] or destroy[ing] . . . by means of fire or an explosive, any building . . . ." 18 U.S.C.A. § 844(i) (West Supp. 1999). "Section 844(i) uses the word 'maliciously' in the same way that common-law courts used it: acting 'intentionally or with willful disregard of the

7

likelihood that damage or injury would result.'" <u>Corona</u>, 108 F.3d at 571. Monroe removed a valve on a gas pipe, causing gas to spew into the apartment. Although he was familiar with the dangers associated with natural gas and he was aware that gas was leaking, he made no attempt to stop the gas flow. An ordinary person would understand that such conduct willfully disregarded the likelihood that damage or injury would result, and therefore was malicious. As a result, § 844(i) as applied to Monroe is not constitutionally vague.

FAILURE TO RECUSE

Monroe was indicted in October 1997, approximately seven weeks after his public defender had testified against Judge McBryde in Judicial Council proceedings. Monroe moved for recusal on these grounds prior to trial, but Judge McBryde denied the motion. The jury convicted Monroe in January 1998. However, before Judge McBryde sentenced Monroe, the Judicial Council issued an order preventing Judge McBryde's involvement for a period of three years in any case involving a lawyer who had testified against him in Council proceedings. As a result, Monroe's case was transferred to Judge Maloney for sentencing.

Under 28 U.S.C. § 455(a), "[a]ny . . . judge . . . shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a) (1993). We review the denial of a motion to recuse for abuse of discretion. <u>See</u> <u>United States v. Anderson</u>, 160 F.3d 231, 233 (5th Cir. 1998).

In determining whether to vacate an order issued after a judge should have recused himself, we apply harmless error analysis. <u>See United States v. O'Keefe</u>, 128 F.3d 885, 892 (5th Cir. 1997). We examine: (1) the risk of injustice to the parties in the particular case; (2) the risk that denial of relief will produce injustice in other cases; and (3) the risk of undermining the public's confidence in the judicial process. <u>See</u> <u>id.</u>

Monroe contends that the district judge made several discretionary decisions, which, even if not reversible error in and of themselves, create an impression of partiality. Specifically, the judge: refused to instruct the jury that malice requires more than mere negligence, in spite of the government's comment to the contrary in its closing argument; admitted inflammatory images of the results of the explosion, although Monroe stipulated to everything except "malice;" admitted a statement by Monroe professing his innocence over a relevancy objection. It is doubtful that these "impressions of partiality" would support Monroe's contention that the judge should have recused himself. However, even assuming the judge abused his discretion by refusing to recuse, Monroe does not prove, or even argue, actual harm to himself, to others, or to the public's confidence in the judicial system. Therefore, we need not vacate and remand for a new trial.

**AFFIRMED**

9