**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 99-20291

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

NARCISO MONTANO-MINOTTA, A/K/A BIGOTE, A/K/A NARCISO MINOTTA
MONTANO, A/KA/ NARCISCO MONTANO-MINOTTA, A/K/A NARCISCO MINOTTA
MONTANO,
*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Texas
(H-98-CR-399-1)

December 21, 2000
Before REYNALDO G. GARZA, STEWART, and DENNIS, Circuit Judges.

PER CURIAM:[1]

Narciso Montano-Minotta ("Minotta") appeals his sentence on the grounds that the

federal district court applied an improper burden of proof during his sentencing and the federal

district court's findings of fact were not supported by the evidence. For the reasons stated below,

we affirm.

**1.      Factual and Procedural Background**

---

[1]Pursuant to 5th Cir. R. 47.5, this Court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5th Cir. R.
47.5.4.

In August of 1998, federal agents ("Agents") initiated surveillance on Minotta and the locales that he frequented including an apartment located at 15100 Ella Blvd., apt. 1408 ("Ella apartment"). The Agents suspected that the Ella apartment was a "stash" house for drugs and that Aldemar Anguilo Gonzalez ("Gonzalez") guarded its contents.

On August 30, 1998, Minotta left the Ella apartment, shut the garage door behind him, and drove to a pharmacy on the corner of Kuykendahl and Ella Blvd. Minotta entered the store, and exited with a package of baby diapers. He then drove to an apartment located at 5959 West and FM 1960 ("1960 apartment"). Thirty minutes later, Minotta left the 1960 apartment and drove to an apartment located in the Nantucket Square Apartments ("Nantucket apartment"). Minotta stayed there for ninety minutes and then drove back to the 1960 apartment.

Based on their surveillance, the Agents approached the occupant of the Nantucket apartment, Jose Santiago Minotta-Gonzalez ("Santiago") and asked him if they could search the apartment. Santiago agreed. The Agents found more than $393,000 in cash stored in various locations, a loaded .357 revolver which had been stolen from a warehouse in Houston, the package of baby diapers which Minotta had purchased,[2] and a document which had Minotta's pager number. The Agents took Santiago into custody.

Following the search of the Nantucket apartment and based on the evidence found there, the Agents decided to search the Ella apartment. The Agents went to the Ella apartment and asked Gonzalez for permission to search it. Gonzalez agreed. Entry into the apartment could only be made via the garage because the front door was barricaded with a 2x4 piece of wood.

_____

[2]The only clothing that was found belonged to an adult male. There was no furniture or crib that would be associated with a baby.

Once inside, the Agents found a loaded .357 revolver, 120 kilograms of cocaine, ledgers which revealed that 60 kilograms of cocaine had already been sold, photographs of Minotta and Gonzalez, and two boxes that were addressed and ready for shipment to Colombia which contained clothing, perfume, compact disks and $10,000 cash. Minotta's fingerprints were on wrappings inside the box that contained the $10,000 cash. The Agents took Gonzalez into custody.

Based on the evidence seized at the apartments, the Agents stopped Minotta while he was driving. The Agents arrested him, and searched his vehicle. They found a .357 revolver which had been stolen from the same warehouse at the same time as the revolver found in the Nantucket apartment, a garage door opener for the Nantucket apartment, and a bag that contained a money wrapper bearing a $250 denomination and small rubber bands. The money wrapper and the rubber bands were the same as those found on the cash at the Ella and Nantucket apartments.

On September 23, 1998, Minotta was indicted for being an alien unlawfully in the United States in possession of a firearm in violation of 18 U.S.C § 922 (g) (5). Minotta decided to plead guilty even though he did not have a plea agreement with the government. On November 30, 1998, before pleading guilty, the federal district court admonished Minotta that he could face 18 U.S.C § 922 (g) (5)'s statutory maximum punishment–120 months. Thereafter, Minotta pled guilty to being an alien unlawfully in the United States in possession of a firearm in violation of 18 U.S.C § 922 (g) (5). The federal district court ordered a presentence investigation report ("PSR").

In the PSR, the probation officer applied United States Sentencing Guideline ("U.S.S.G.") § 2K2.1. U.S.S.G § 2K2.1 (c) (1) (A) is a cross reference that instructs a court to apply U.S.S.G.

3

§ 2X1.1, if the defendant possessed any firearm in connection with the commission of another offense and the resulting offense level is greater than the offense level determined under U.S.S.G. § 2K2.1 without the cross reference. The federal district court found, by a preponderance of the evidence, that Minotta was involved in a conspiracy to possess with the intent to distribute 180 kilograms of cocaine and that the revolver which made the basis of the 18 U.S.C. § 922 (g) (5) conviction was connected to the drug conspiracy. The federal district court determined that the offense level under the cross reference, was greater than the offense level under U.S.S.G. § 2K2.1 without the cross reference, and thus, calculated Minotta's offense level under the cross reference.

U.S.S.G. § 2X1.1 instructs a court to apply the guideline section for the substantive offense. The substantive offense is possession with the intent to distribute 180 kilograms of cocaine. Therefore, U.S.S.G. § 2D1.1 is the applicable guideline section. Under U.S.S.G. § 2D1.1, the court determined that Minotta's base offense level was 38. The federal district court pursuant to U.S.S.G. § 2D1.1 (b) (1) increased Minotta's offense level by 2 because Minotta possessed a firearm in connection with the drug conspiracy. Finally, the federal district court reduced Minotta's offense level by 3 pursuant to U.S.S.G. § 3E1.1 for acceptance of responsibility. His total offense level was 37. The court found that Minotta's criminal history category was I. Pursuant to the guidelines, the range was 210 to 262 months for an offense level 37 and a criminal history I. The federal district court, however, chose to sentence Minotta to 120 months imprisonment, the statutory maximum.

2.      **Discussion**

The appellant, Minotta, argues that the federal district court improperly applied the preponderance of the evidence burden of proof rather than a heightened standard to establish the

facts used in determining his sentence. Minotta, further, argues that regardless of the burden of proof, the federal district court's findings of fact were clearly erroneous because they were not supported by the evidence. We disagree. The federal district court did not err when it applied the preponderance of the evidence burden of proof to establish the facts used to determine Minotta's sentence nor were its factual findings clearly erroneous.

### 2.1 The Federal District Court applied the appropriate burden of proof

The issue before us is what is the appropriate burden of proof that should be applied to establish facts used in sentencing when there is a cross reference under the guidelines. We review *de novo* whether a federal district court applied the appropriate burden of proof to establish facts used in sentencing. *See U.S. v. Hull,* 160 F.3d 265, 268 (5th Cir. 1998) ("matters of interpretation of the sentencing guidelines are reviewed de novo").

Minotta acknowledges that the preponderance of the evidence standard is firmly established in this Circuit as the generally appropriate burden of proof in sentencing proceedings. He argues, however, that his case is the rare instance where a heightened burden of proof should be applied. Minotta contends that the heightened burden should apply because his sentence was increased from a range of 10-16 months to 120 months because of a cross reference.

In rare circumstances, a heightened standard may be appropriate when "a particular fact relevant to sentencing ***dramatically alters*** the sentencing options of a court to the disadvantage of the defendant." *See U.S. v. Millsaps,* 157 F.3d 989, 994 (5th Cir. 1998) (emphasis added). We are, however, "quite reluctant to part from the preponderance of the evidence standard in a non-capital case[.]" *See id.* at 995.

Minotta's case is not the rare circumstance. By our calculations Minotta sentence was not

increased from a range of 10-16 months to 120 months because of a cross reference. Rather, it was increased from a range of 21-27 months to 120 months.[3] This increase is consistent with other cases in our Circuit that have applied the preponderance of the evidence burden of proof during sentencing. *See U.S. v. Carreon,* 11 F.3d 1225 (5th Cir. 1994) (an increase from 6 years to 20 years); *U.S. v. Mergerson,* 4 F.3d 337 (5th Cir. 1993) (an increase from 30 years to life). Moreover, Minotta's sentence was within the statutory range, albeit the statutory maximum. Whether a heightened burden of proof would be required in light of *Apprendi v. New Jersey,* ___ U.S. ___, 120 S.Ct. 2348, 147 L. Ed. Ed 435 (2000) if his sentence had been above the statutory maximum, is a question we leave unanswered.

## 2.2 Federal District Court's factual findings were not clearly erroneous

Minotta challenges the trial court's factual findings used during sentencing. Minotta contends that there was insufficient evidence that he was involved in a drug conspiracy and that the revolver that made the basis of the 18 U.S.C. § 922 (g) (5) conviction was not connected to the drug conspiracy. We review a federal district court's factual finding for sentencing purposes for clear error. *See Millsaps,* 157 F.3d at 995.

At the Nantucket apartment, the Agents found more than $393,000 cash, a revolver

---

[3]Minotta was convicted of violating 18 U.S.C. § 922 (g) (5). Per Appendix A–Statutory Index, the appropriate guideline for violating 18 U.S.C. § 922 (g) (5) is 2K2.1. Exclusive of the cross reference in U.S.S.G. § 2K2.1, Minotta scores a level 16. Minotta has a initial level of 12 per U.S.S.G. § 2K2.1 (a) (7). The initial level is increased by 2 per U.S.S.G. § 2K2.1 (b) (4) because a stolen firearm was involved. Another 4 levels is added per U.S.S.G. § 2.K2.1 (b) (5) because Minotta possessed a firearm in connection with another felony offense, the drug conspiracy. 2 levels are then subtracted pursuant to U.S.S.G. § 3E1.1 (a) for acceptance of responsibility. Therefore, without the cross reference Minotta's total offense level would be 16. Considering his criminal history category, I, and an offense level of 16, Minotta's sentencing range would be 21-27 months.

which had been stolen from the same location at the same time as the revolver Minotta was convicted of possessing, and the package of baby diapers which Minotta had bought. At the Ella apartment, the Agents found 120 kilograms of cocaine, drug ledgers, photographs of Minotta and Gonzales, and a box addressed and ready for shipment to Columbia with $10,000 cash and Minotta's fingerprints on the wrappings inside. When the Agents stopped Minotta, they found a revolver which had been stolen from the same location at the same time as the revolver found in the Nantucket apartment, a garage door opener to the Nantucket apartment, a bag which contained a money wrapper and rubber bands that were the same as those found on the cash at the Ella and Nantucket apartments. Based on this evidence, the trial court's finding, by a preponderance of the evidence, that Minotta was involved in a drug conspiracy and that the revolver which made the basis of the 18 U.S.C. § 922 (g) (5) conviction was connected to the drug conspiracy was not clearly erroneous.

3.      **Conclusion**

Based on the foregoing, we AFFIRM the federal district court's decisions in all respects regarding Minotta's sentence.