UNITED STATES of America

v.

Dimitrios MANOLATOS

No. CR.A. 01–156.

United States District Court,
E.D. Louisiana.

Jan. 18, 2002.

---

Edward J. Castaing, Jr., Crull, Castaing, Lilly & Herman, New Orleans, LA, for Defendant.

Tracey N. Knight, U.S. Atty.'s Office, New Orleans, LA, for U.S.

## ORDER & REASONS

FALLON, District Judge.

Before the Court are the Defendant's post-trial motions for judgment of acquittal, new trial, and arrest of judgment. For the following reasons, Defendant's motions are DENIED.

## I. BACKGROUND

Dimitrios Manolatos, a former captain of the M/V AVRA D, was indicted for conspiracy to import five kilograms or more of cocaine hydrochloride into the United States, in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and 963, and possession with intent to distribute five kilograms or more of cocaine hydrochloride in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The Government alleged that in May of 2001, the Defendant conspired with two accomplices, Alberto Sanchez and Hiram Rodriguez, to smuggle and eventually offload 138 kilograms of cocaine from the AVRA D, while the ship was traveling in the Mississippi River.

At trial, Sanchez and Rodriguez testified that they were sent by a Colombian drug dealer to meet the M/V AVRA D and offload cocaine while the vessel was in the Port of New Orleans. They told of a meeting with Manolatos, of arranging for the discharge of drugs, and described his participation in the operation. Evidence, including car rental records and hotel receipts, was introduced in an effort to corroborate their testimony. A portable phone which had been used in the drug operation was found on the vessel in an area frequented by Manolatos.

On October 15, 2001, after a week-long trial, a jury found Manolatos guilty as charged. The Defendant now moves for a new trial, judgment of acquittal, or arrest of judgment.

## II. DEFENDANT'S POST–TRIAL MOTIONS

The Defendant submits several arguments in support of either a judgment of acquittal, new trial, or arrest of judgment. Defendant first, and primarily, argues that "the impeached testimony [of Sanchez and Rodriguez] cannot be relied upon to establish the guilt of Manolatos." *See* Memorandum in Support of Motion for Judgment of Acquittal/New Trial/Arrest of Judgment, at 3. According to the Defendant, Sanchez and Rodriguez "were severely impeached" by evidence of their past activities and with the false information they provided to Agent Victor Thompson during undercover, videotaped interviews on May 14 and May 22, 2001. *See id.* The Defendant cites a litany of statements in support of this point, including Sanchez's reports of his life in Colombia, examples of his past violence and murder, and his stories of other drug deals and smuggling operations. *See id.* at 3–4.

The Defendant notes further that Rodriguez is "an admitted Marxist guerrilla" who, according to Sanchez, "stabbed a man 19 times to teach him a lesson." *See id.* at

4–5. According to the Defendant, in light of the backgrounds of these two witnesses, and the many lies they have told in the past, "it was virtually impossible ... for any reasonable juror to make any finding based on the testimony of Sanchez and/or Rodriguez." *See id.* at 5. The Defendant further argues that the jury could not conclude that there was a specific amount of cocaine or that the substance allegedly smuggled was cocaine, because Sanchez and Rodriguez were "the only people who handled, weighed and tested the cocaine." *See* Memorandum in Support of Motion for Judgment of Acquittal/New Trial/Arrest of Judgment, at 5.

The Defendant next argues that the Government's corroborating evidence was inconclusive and "did not overcome reasonable doubt." *See id.* at 7. First, the defense maintains that cell phone records purporting to link the Captain to the smuggling operation are inconclusive. According to the Defendant, the Government had no proof that the Captain made or received those calls, and Agent Hillberry admitted the government agents did not know who had access to the phone or to the Defendant's cabin. *See id.* at 8.

Addressing the remaining corroborating evidence, the defense points out that the handwritten notes found in the Defendant's cabin were never analyzed by a handwriting expert and there was no evidence of where the notes were located at the time of seizure. *See id.* at 10. The Defendant also notes that although address books found in the Captain's cabin contained addresses of co-conspirators, the only address book with the Defendant's name on it did not contain any of these addresses. *See id.* The Defendant further emphasizes that there were no launch tickets or other proof indicating that Sanchez and Rodriguez entered the ship, that the Defendant essentially denied involvement with drugs when interviewed by Agent Hillberry, and that the Government did not corroborate the testimony of Sanchez and Rodriguez with testimony of the cook or other crewmembers. *See id.* at 10.

Next, the Defendant argues that the Government should have used drug-sniffing dogs to examine the ship, and offered no compelling reason for its failure to do so. *See id.* at 11. The Defendant also points to his successful thirty-year career at sea, and the absence of any financial or other motive in this case. *See* Memorandum in Support of Motion for Judgment of Acquittal/New Trial/Arrest of Judgment, at 11. Finally, the Defendant argues that the remaining evidence, *i.e.,* hotel and car rental records and purchase records are meaningless without the testimony of Sanchez and Rodriguez. *See id.* at 12.

The Defendant briefly addresses the possible implications of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), in this case. *See id.* at 21. The Defendant argues that in the Manolatos case, the Government was never able to prove a specific quantity of drugs because "no drugs were ever seized." *See id.* According to the Defendant, the amount of drugs is an essential element of the crimes at issue, and pursuant to *Apprendi,* the Government must prove, and the jury must find, the amount of drugs involved. *See id.* at 21–22.

The Defendant's final argument relates to a *Times–Picayune* newspaper article of October 17, 2001. Defendant maintains the article contained information provided by Customs Agent Scott Illing, and included facts, such as an alleged payment of $70,000 to Captain Manolatos and a "controlled buy" by agents in New York, that were inconsistent with the evidence presented at trial. *See id.* at 23. The Defendant asserts that "if the information provided by Agent Illing is accurate, then a substantial part of the Government's case

was inaccurate and … Defendant is entitled to a new trial." *See id.* at 24.

In response, the Government maintains that the evidence presented at trial was sufficient to support a finding of guilt. The Government disputes the Defendant's assertion that the testimony of Sanchez and Rodriguez was the only evidence to support the conviction in this case. The Government points out that six witnesses were called to corroborate the accomplice testimony and that the terms of the Sanchez and Rodriguez plea agreements and their criminal histories were presented to the jury. *See* Government's Response and Incorporated Memorandum in Opposition to Defendant's Motion for Judgment of Acquittal/New Trial/Arrest of Judgment, at 3. The Government emphasizes that both Special Agent Gene Rodriguez and Agent Victor Thompson testified that they spoke to the Captain by phone and that Agent Hillberry seized evidence from the Defendant's cabin, including a scrap of paper with Sanchez and Rodriguez's telephone number and calculations consistent with the dollar amount the Captain was allegedly to be paid for smuggling, a phone book with numbers for Sanchez, Rodriguez and another alleged co-conspirator in Colombia, and several cellular telephones. *See id.* at 4. According to the Government, the records of the phones seized from the Defendant's cabin revealed calls between the phone found in the cabin and Sanchez and Rodriguez. *See id.* at 5.

Addressing *Apprendi,* the Government maintains that the quantity of drugs was proven beyond a reasonable doubt in this case. The Government cites testimony of Special Agents Gene Rodriguez and Victor Thompson as well as testimony of Hiram Rodriguez in support of its claim that 138 kilograms of cocaine were involved in this operation. *See id.* at 8. The Government also notes that a document found in the Defendant's cabin contained calculations consistent with payment of $138,000. *See id.* Finally, the Government notes that "in light of most recent case law … [t]he Government was only required to prove that Manolatos conspired to possess with intent to distribute and possessed with intent to distribute *five kilograms or more* of cocaine hydrochloride." *See id.* at 9.

The Government maintains that the "unsworn information" included in the *Times–Picayune* article was inaccurate and should not be considered by the Court. *See* Government's Response and Incorporated Memorandum in Opposition to Defendant's Motion for Judgment of Acquittal/New Trial/Arrest of Judgment, at 9.

## III.  ANALYSIS

### STANDARD FOR JUDGMENT OF ACQUITTAL

Federal Rule of Criminal Procedure 29(a) provides that "[t]he court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information … if the evidence is insufficient to sustain a conviction of such offense or offenses." *See* Fed. R.Crim.P. 29(a). In deciding a motion for judgment of acquittal, the Court "must determine whether, having viewed the evidence and the inferences that may be drawn from it in the light most favorable to the verdict, a rational jury could have found the essential elements of the offenses beyond a reasonable doubt." *See United States v. Sneed,* 63 F.3d 381, 385 (5th Cir.1995). "[T]o grant a judgment of acquittal, the Court must conclude, after viewing the evidence in the light most favorable to the Government, that a rational jury would have to have entertained a reasonable doubt as to the defendant's guilt." *See United States v. Cleveland,* 1997 WL 539677, at *2 (E.D.La. Aug. 26, 1997) (Vance, J.) (citing *United States v.*

*Burns,* 597 F.2d 939, 941 (5th Cir.1979)). The same test applies whether the Government's case relies on direct or entirely circumstantial evidence. *See United States v. Lorence,* 706 F.2d 512, 518 (5th Cir.1983). A district court's denial of a motion for judgment of acquittal is reviewed *de novo. See United States v. Rasco,* 123 F.3d 222, 227 (5th Cir.1997).

## STANDARD FOR A NEW TRIAL

██ Federal Rule of Criminal Procedure 33 provides that "the court may grant a new trial to [a] defendant if the interests of justice so require." See Fed.R.Crim.P. 33. "A new trial is granted 'only upon demonstration of adverse effects on substantial rights of a defendant.'" *See United States v. Rasco,* 123 F.3d 222, 228 (5th Cir.1997) (quoting *United States v. Cooks,* 52 F.3d 101, 103 (5th Cir.1995)). The decision to grant a new trial is reviewed for abuse of discretion. *See id.*

## STANDARD FOR ARREST OF JUDGMENT

According to Federal Rule of Criminal Procedure 34, "[t]he court on motion of a defendant, shall arrest judgment if the indictment or information does not charge an offense or if the court was without jurisdiction of the offense charged." *See* Fed.R.Crim.P. 34.

██ In this case, the Court finds that neither a judgment of acquittal, new trial, or arrest of judgment are warranted. The Defendant argues strenuously-and eloquently-that the Government's primary witnesses, Sanchez and Rodriguez, "cannot be relied upon to establish the guilt of the Defendant." In his cross-examination, defense counsel portrayed Sanchez and Rodriguez as violent, despicable human beings. In his summation, defense counsel argued logically and coherently that the jury should disbelieve them and reject their testimony.

The jury charges reminded the jury that "[a] witness may be discredited or 'impeached' by contradictory evidence showing that he or she testified falsely concerning a material matter … it is your exclusive province to give the testimony of that witness such credibility or weight as you think it deserves." *See* Court's Instructions to the Jury, at 10. The Court's instructions further explained that the testimony of an alleged accomplice "is always to be received with caution and weighed with great care." *See id.* at 11. In this case, the jury was attentive during the trial and appeared to process the testimony and jury instructions. Their verdict reflects that they believed Sanchez and Rodriguez's account of these events.

The Fifth Circuit has expressly held that "[i]t is the sole province of the jury, and not within the power of this Court to weigh conflicting evidence and evaluate the credibility of witnesses." *See United States v. Millsaps,* 157 F.3d 989, 994 (5th Cir. 1998) (quoting *United States v. Ivey,* 949 F.2d 759, 766 (5th Cir.1991)). In *Millsaps,* the Defendant, like Captain Manolatos, challenged his conviction based on the sufficiency of the evidence, arguing that the government's main witness, an informant, lacked credibility. The Fifth Circuit expressly rejected this argument, explaining that "[i]t is clear that [the informant] is not the most pristine of witnesses … [he] has been paid over $1,000,000 by the DEA for his testimony in past cases, he cheated on his taxes, and he beat his wife. In light of these facts, however, the jury still chose to convict the defendants." *See Millsaps,* 157 F.3d at 994. The Court in *Millsaps* concluded that "because the jury has the sole power to weigh and evaluate the credibility of each witness … it would be unjustified and improper for the Court to intervene." *See id.*

The Court in the present case concludes that there may have been sufficient reason

to reject the testimony of the Defendant's alleged accomplices, Sanchez and Rodriguez. But the decision to accept or reject their testimony was clearly a "credibility call" and the jury chose to believe them. It is the "sole province of the jury" to weigh witness credibility. As previously mentioned, defense counsel ably argued their lack of credibility at trial, meticulously pointing out discrepancies and vigorously attacking the testimony of these witnesses as unbelievable and untrustworthy. This issue was clearly placed before the jury and the Court will not now disturb their conclusions.

■ The *"Apprendi* issues" raised by the Defendant also do not warrant a judgment of acquittal, a new trial, or an arrest of judgment. The indictment in this case charged the Defendant with conspiracy to import five (5) kilograms or more of cocaine hydrochloride into the United States, in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and 963, as well as possession with intent to distribute five (5) kilograms or more of cocaine hydrochloride in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Under 21 U.S.C. § 960(b)(1)(B)(ii), an enhanced penalty for unlawful importation under section 952 is prescribed for cases involving "5 kilograms or more" of cocaine. Under 21 U.S.C. § 841(b)(1)(A)(ii), an enhanced penalty for possession with intent to distribute cocaine applies to cases involving "5 kilograms or more" of cocaine.

■ Both the Government and the Defendant agree that under *Apprendi*, "[o]th-er than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum period must be submitted to a jury, and proved beyond a reasonable doubt." *See Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348. Accordingly, the Fifth Circuit has held that "if the government seeks enhanced penalties based on the amount of drugs ... the quantity must be stated in the indictment and submitted to the jury for a finding of proof beyond a reasonable doubt." *See United States v. Doggett*, 230 F.3d 160, 165 (5th Cir.2000).

In this case, the two-count indictment complied with *Apprendi* by specifically charging the Defendant with importation and possession with intent to distribute five (5) kilograms or more of cocaine. *See United States v. DeLeon*, 247 F.3d 593, 597 (5th Cir.2001) ("[W]e hold that an indictment's allegation of a drug-quantity range, as opposed to a precise drug quantity, is sufficient to satisfy *Apprendi* and its progeny."). In addition, both the jury charge and the jury verdict form instructed the jury to find beyond a reasonable doubt the drug-quantity range involved in both offenses. The evidence supported the jury's conclusion that over five kilograms of cocaine was involved in this operation. *Apprendi* does not require that the jury find the exact quantity of cocaine involved. It is only necessary that they find beyond a reasonable doubt that the amount met the statutory criteria to support the relevant penalty enhancement.[1] Accordingly, the

---

1. *See United States v. Clinton*, 256 F.3d 311, 314 (5th Cir.2001) (explaining that "the Court has expressly rejected the argument that *Apprendi* applies to enhancements based upon the sentencing guidelines, whether tied to quantity or some other relevant fact, which do not cause the sentence to exceed the statutory range authorized by the jury's verdict."); *see also United States v. Hollingsworth*, 257 F.3d 871, 878 (8th Cir.2001) ("The jury need not make an exact drug quantity finding to satisfy *Apprendi*. It need only make findings regarding ranges of quantities relevant to the varying statutory maximums ... [i]t would still be proper for the sentencing judge to then make more exact calculations for ... determining where the sentence will actually fall within the statutory range determined by the jury's verdict.").

*"Apprendi* issue" does not warrant post-trial relief in this case.[2]

## IV. CONCLUSION

For the foregoing reasons, the Defendant's motions for judgment of acquittal, new trial, and arrest of judgment are DE-NIED.

**2.** The Court also rejects the Defendant's arguments based on the unsworn, out-of-court statements contained in the *Times–Picayune* article.