United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 6, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 02-10905
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DONALD RICHARD CHURCHILL,

Defendant-Appellant.

--------------------
Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:01-CR-373-ALL-G
--------------------

Before JONES, BENAVIDES, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Donald Richard Churchill appeals his convictions for attempting to damage and destroy by means of fire and an explosive, a building used in interstate commerce and with using, carrying, and possessing a destructive device in furtherance of arson. Churchill was sentenced to a term of imprisonment of 152 months for the attempt charge and to life imprisonment on the charge involving the use of a destructive device.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Churchill argues that the evidence was insufficient to support his convictions for the two aforementioned charges because there was no intent to destroy the Custom Canvas building during that incident.  He argues that the fire in that building was started to remove suspicion from the tenant of the building damaged in the first fire.

Viewing the evidence in the light most favorable to the verdict, it was sufficient to show that Churchill acted with willful disregard or intentionally to use a destructive device to cause damage to the Custom Canvas Building, a building containing a business involved in interstate commerce.  Churchill obtained the jugs, the accelerant, and the wicks necessary to create the destructive device required to carry out the crime of violence, arson.  He brought Hartkey to the building and directed Hartkey to ignite and throw the jugs at the building.  Churchill took the overt steps necessary to cause damage and, in fact, did cause damage to the second building with the use of an incendiary device.

There was sufficient evidence presented for a rational trier of fact to find that the Government proved the essential elements of both offenses beyond a reasonable doubt.  See 18 U.S.C. § 844(i); 18 U.S.C. § 924(c)(1)(B)(ii); United States v. Monroe, 178 F.3d 304, 307 (5th Cir. 1999); United States v. Briscoe, 742 F.2d 842, 846 (5th Cir. 1984).

Churchill argues that the district court plainly erred in admitting opinion evidence by the investigating officer regarding an immunity agreement. He argues that the testimony constituted an opinion as to Hartkey's veracity and implied that his testimony as to Churchill's guilt was true.

The prosecutor's question concerning the witness's immunity agreement was in response to defense counsel's assertion during cross-examination of the officer that the Government acted hastily and unreasonably in providing Hartkey with complete immunity. The officer's response was not an opinion on the ultimate issue of Churchill's guilt, but merely an affirmation of his belief that the Government acted prudently in granting Hartkey immunity. Therefore, it was not error to admit this testimony.

Churchill argues that the district court abused its discretion in allowing the Government to elicit testimony about his misconduct and bad character. The testimony complained about did not fall into any of the exceptions to the hearsay rule cited by the Government because it is not clear that the statements were made contemporaneously with the incident and because the source of the women's fears was not admissible evidence of their existing mental state. See FED. R. EVID. 803(1), (2), (3). Although the testimony concerning the women's statements was not admissible, the error was harmless because it was not so

prejudicial as to affect the jury's verdict. See United States v. Skipper, 74 F.3d 608, 612 (5th Cir. 1996).

Churchill argues that the district court abused its discretion in allowing the prosecutor to ask Thomas whether he believed Churchill was "crooked" and engaged in shady deals. because it was elicited to prove that he was a man of bad character and acted in conformity therewith. Although this testimony indicated that Churchill had previously engaged in some "shady" deals, it was also evidence that Thomas was aware that Churchill was not a law-abiding citizen. The Government's question raised an inference that if the building's tenant was seeking a means to illegally collect insurance money, he would have felt comfortable asking Churchill to become involved in the scheme. Thus, the evidence was admissible for a purpose other than to merely show Churchill's bad character. See FED. R. EVID. 404(b).

Further, as the Government points out, in cross-examining accomplice Hartkey about one of his statements, defense counsel referred to Hartkey's comment that Churchill had been involved in different scams and two or three insurance jobs. Counsel opened the door to questioning about Churchill's past unlawful activities and, thus, cannot complain about the prosecutor's pursuit of the subject. See United States v. Raymer, 876 F.2d 383, 388 (5th Cir. 1989).

With respect to the testimony that Churchill was intoxicated during the clean-up process, it was admissible to show why Churchill was so candid about making money as a result of the fire. The admission of that evidence was not plain error.

Churchill's convictions are AFFIRMED.